UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| UNITED STATES OF AMERICA, | Case No. 2:14-cr-00086-JCM-PAL |
|---|---|
| Plaintiff, | **ORDER OF REPORT AND RECOMMENDATION** |
| v. | |
| ALEX STARBUCK SNAGGLERS, | (Mot Dismiss - Dkt. #60) |
| Defendant. | |

Before the court is Defendant Alex Starbuck Snagglers' ("Snagglers") Motion to Dismiss (Dkt. #60) which was referred for a Report of Findings of Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB1-4. The court has reviewed the motion, the government's Response (Dkt. #63), and Snagglers' Reply (Dkt. #64).

## BACKGROUND

### I.   Procedural History

Snagglers is charged in an Indictment (Dkt. #1) returned March 12, 2014, with coercion and enticement in violation of 18 U.S.C. § 2422(b). The charge arises out of a sting operation initiated by an undercover law enforcement officer, Detective Yurek ("Yurek"). Snagglers placed an ad on Craigslist.com in the casual encounter section entitled "Blue eyed white male 4 young girls oral & more – m4w – 30 (SW Las Vegas)." Detective Yurek is an officer assigned to the Internet Crimes Against Children ("ICAC") Child Protection Task Force and responded to the ad on February 5, 2014, posing as a 13-year-old girl named "Tanya." Between February 5, and February 18, 2014, "Tanya" and Snagglers engaged in a series of email and text message exchanges. Snagglers was arrested on February 18, 2014, when he arrived at a Target parking lot with condoms and lubricants in his car to meet "Tanya."

///

**II.     The Parties' Positions.**

  **A. Snagglers' Motion to Dismiss (Dkt. #60)**

In the current motion, Snagglers seeks to dismiss the indictment alleging he did not commit the offense, and that the government cannot prove that he committed the offense. He argues the email and text exchanges between Snagglers and Yurek produced in discovery establish that Snagglers did not attempt to entice, lure or coerce Detective Yurek into having sex. The court should therefore dismiss the indictment. The ad was posted on Craigslist in a section that is only available for users over eighteen years of age. Therefore, he expected to receive responses from women 18-30 years of age.

The motion cites extensively to the Congressional Record and argues that the legislative history of 18 U.S.C. § 2422(b) reflects Congress' concerns about predators interacting with minors online. The legislative history surrounding the passage of § 2422(b) in the Protection of Children from Sexual Predators Act of 1998, commonly called the "Protection Act", reflects that Congress intended the Act to prevent sexual predators from being able to prey on victims by using the internet to solicit, influence and victimize minors. The Protection Act added an "attempt" provision and specifically targeted the persuasion of minors. Snagglers argues that the bill was not crafted to prevent minors from going online and seeking sex, and that the statute was written to prevent defendants from initiating contact with minors and then subsequently coercing, luring or enticing those contacted into having sex. Snagglers contends that § 2422(b) requires that the Defendant be the person initiating contact with the minor. Snagglers also claims that this statute is a luring statute, not a corrupting statute. Because the evidence in this case establishes that Snagglers did not initiate contact with Yurek posing as "Tanya," § 2422(b) does not apply to Snagglers' conduct.

Snagglers also makes arguments based on the Nevada statute he was initially charged with in the state system, NRS 201.560. In *State v. Colisimo*, 122 Nev. 550, 142 P.3d 352, the Nevada Supreme Court held that, to violate the statute a defendant must be the one to initiate the contact with the minor. Because Snagglers did not make the initial contact, he did not violate NRS 201.560. Snagglers also argues that the manner in which the government conducted the

investigation in this case is contrary to law enforcement policies that are designed to avoid entrapping defendants.

Additionally, Snagglers contends the indictment should be dismissed because his due process rights under the Fifth Amendment were violated by the government's outrageous conduct. Snagglers acknowledges that the standard for establishing outrageous government conduct is high, but asserts that the government in this case directed the criminal enterprise from start to finish. Application of the five-factor test developed by the Ninth Circuit in *United States v. Bonanno*, 852 F.2d 434, 438 (9th Cir. 1988), and the Ninth Circuit's more recent decision in *United States v. Black*, 733 F.3d 294 (9th Cir. 2013) mandates dismissal.

Finally, Snagglers argues that the indictment should be dismissed because the government's outrageous conduct and his lack of predisposition to commit the offense charged constitute entrapment.

**B. The Government's Response (Dkt. #63)**

The government opposes the motion arguing that the motion to dismiss under Fed. R. Crim. P. 12(b) is not an appropriate vehicle to argue the sufficiency of the evidence. The government disputes factual arguments raised in Snagglers' motion that Craigslist requires its users to be over the age of 18 and therefore the Defendant expected that only women over the ages of 18 and 30 would respond to his ad. The government intends to present evidence that Craigslist requires no age verification. There are a number of other factual disputes that cannot be decided as a matter of law.

The government also argues that the plain language of 18 U.S.C. § 2422(b) does not require that the Defendant initiate communication with the minor child. In this case, Snagglers is not charged with actual enticement, but attempting to knowingly persuade, induce, entice or coerce a child to engage in sexual activity. Ninth Circuit authority establishes that to prove an attempt under 18 U.S.C. § 2422(b) the government must satisfy a two-prong test: first, the evidence must demonstrate that the Defendant intended to violate the statute; and second, that the Defendant's actions show he took a substantial step toward completing the act. The government asserts that Snagglers' choice of words used in communications with Yurek satisfy

1    the first prong and demonstrate his intention to lure a minor into sexual activity. The
2    government also argues that it will be able to establish the second prong of the test because
3    Snagglers' actions consisted of more than mere preparation and resulted in travel to a negotiated
4    meeting place where he arrived with condoms and lubricant.

5    The government disputes that Detective Yurek's conduct constitutes outrageous
6    government conduct in volition of the Due Process Clause of the Fifth Amendment. Detective
7    Yurek's conduct in communicating with Snagglers does not qualify as grossly shocking or so
8    outrageous to violate due process. The government acknowledges that Yurek initiated
9    communication by email in response to Snagglers' Craigslist ad by asking "how young are you
10   willing to kik it with?" However, the government maintains that after Snagglers was told Tanya
11   was a 13-year-old girl, he continued to communicate with her. Snagglers waited only seven
12   minutes to ask for a nude picture. The government also claims that Detective Yurek provided
13   Snagglers with an escape by asking if, knowing Tanya was 13, he still wanted the picture.
14   Snagglers responded that he wanted regular and nude pictures "so I know you are serious."

15   Finally, the government argues that the court should deny the motion to dismiss based on
16   an entrapment defense because it is premature and fact intensive.

17   **C. Snagglers' Reply (Dkt. #64)**

18   Snagglers replies that the facts the United States identifies in its opposition to the motion
19   to dismiss are irrelevant to the legal issues that require the indictment to be dismissed. Whether
20   or not Craigslist is aware of minors using its site does not bear on Snagglers' potential intent to
21   engage with minors. Snagglers argues he made no effort to seek underage persons. Rather,
22   detective Yurek provoked and solicited him without seeing him engage in any suspicious
23   activity. The number of messages exchanged is also immaterial to the legal issues in this matter.

24   Snagglers claims that the government's response implicitly admits entrapping him. The
25   government's response indicates Detective Yurek gave Snagglers an "out," and an opportunity to
26   "escape" the trap being laid. The government's reference to an "out" and an "escape" is
27   indicative of entrapment. The reply also points out that the United States' response did not
28   address Snagglers' arguments that he never used words of coercion, enticement, persuasion,

1  inducement, and did not engage in conduct to overcome or bend the will of Detective Yurek to
2  have sex.
3       Snagglers maintains that the government's response admits to selective prosecution "thus
4  further indicating and emphasizing outrageous government conduct."  Snagglers was initially
5  charged in state court under the state version of the crime which requires that the Defendant be
6  the one that initiates the contact with the child.  Detective Yurek is an employee with the
7  Henderson Police Department.  The sting operation was a state operation, but at some point the
8  federal government determined that it would assume jurisdiction over the case and charge
9  Snagglers.  The fact that the federal government assumed jurisdiction over Snagglers emphasizes
10 the outrageous government conduct and the fact that the crime charged was manufactured.

11 **DISCUSSION**

12 **I.    Applicable Law and Analysis**

13     **A.  Rule 12(b)**

14      Pursuant to Fed. R. Crim. P. 12(b)(1), "Any defense, objection, or request which is
15 capable of determination without a trial of the general issue may be raised before trial by
16 motion."  In determining a motion to dismiss an indictment, "a court is limited to the face of the
17 indictment and must accept the facts alleged in that indictment as true."  *United States v. Ruiz-*
18 *Castro*, 125 F. Supp. 2d 411, 413 (D. Haw. 2000) (*citing Winslow v. United States*, 216 F.2d
19 912, 913 (9th Cir. 1954), *cert. denied*, 349 U.S. 922 (1955)).  The indictment itself should be "(1)
20 read as a whole; (2) read to include facts which are necessarily implied; and (3) construed
21 according to common sense."  *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993)
22 (*citing United States v. Buckley*, 689 F.2d 893, 899 (9th Cir. 1982), *cert. denied*, 460 U.S. 1086
23 (1983)).

24     **B.  Request for Evidentiary Hearing**

25      The face page of the motion and reply request an evidentiary hearing.  However, the
26 motion itself does not provide an offer of proof or articulate what Snagglers expects an
27 evidentiary hearing would establish if one was conducted.  The Ninth Circuit has held that an
28 evidentiary hearing is necessary where a defendant alleges facts with "sufficient definiteness,

clarity, and specificity to enable the court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (internal citations omitted). The determination of whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court. *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.) (amended by 609 F.2d 433 (9th Cir. 1979).

The factual bases for Snagglers' motion to dismiss is supported by the messages he exchanged with Yurek that the government has produced in discovery. Snagglers has not challenged the accuracy of the contents, disputed their authenticity, or otherwise established a contested issue of fact which warrants an evidentiary hearing. The court therefore declines to conduct an evidentiary hearing.

The indictment in this case charges Snagglers with coercion and enticement in violation of 18 U.S.C. § 2422(b) which reads:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, knowingly persuades, induces, entices, or coerces any individual who has not attained the age of eighteen years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title, imprisoned not more than fifteen years, or both.

The indictment alleges that on or about February 5, 2014, to on or about February 18, 2014, in the state and federal district of Nevada, Snagglers used "a facility of interstate commerce to knowingly persuade, induce, entice, and coerce; an attempt to knowingly persuade, induce, entice and coerce, an individual who has not attained the age of eighteen years to engage in any sexual activity for which any person can be charged with a criminal offense under federal, state and local law, in violation of § 2422(b)."

The Ninth Circuit has held that from the text of the statute, the elements of the crime require the government to prove a person "knowingly": (1) actually or attempted to (2) persuade, induce, entice, or coerce (3) a person under eighteen years of age (4) to engage in sexual activity that would constitute a criminal offense. *United States v. Meek*, 366 F.3d 705, 720 (9th Cir. 2004). An actual minor victim is not required for an attempt conviction under 18 U.S.C. § 2422(b). *Id.* at 717. The belief that a minor was involved is sufficient to sustain an attempt

1  conviction under 18 U.S.C. § 2422(b). *Id.* at 718. In *Meek*, the Ninth Circuit joined the Fifth
2  and Eleventh Circuits holding that an attempt conviction under § 2422(b) "requires evidence that
3  a defendant intended to violate the statute and took a substantial step toward completing the
4  violation." *Id.* at 720 (quotations and citations omitted). ("The attempt provision of the statute
5  underscores Congress' effort to impose liability regardless of whether the defendant succeeded in
6  the commission of his intended crime.") *Id.* at 718.

7  An indictment is sufficient if it contains the elements of the offense charged and fairly
8  informs the defendant of the charge against which he must defend and enables him to plead an
9  acquittal or conviction to bar a future prosecution for the same offense. *United States v. Hill*,
10 279 F.3d 731, 741 (9th Cir. 2002) (citing *Hamling v. United States*, 418 U.S. 87 (1974)). An
11 indictment is generally sufficient if it sets forth the offense in the words of the statute itself as
12 long as "those words of themselves fully, directly, and expressly, without any uncertainty or
13 ambiguity, set forth all of the elements necessary to constitute the offenses intended to be
14 punished." *Hamling*, 418 U.S. at 117.

15 Accepting the facts alleged in the indictment as true, the indictment is sufficient. It
16 complies with the requirements the Ninth Circuit set forth in *United States v. Hill*, because it
17 contains the elements of the charged offense, enables Snagglers to prepare his defense, enables
18 him to plead double jeopardy, and informs the court of the alleged facts so that it can determine
19 the sufficiency of the charge. Snagglers' arguments that he did not commit the offense are for
20 the jury to decide.

21 **C.  Outrageous Government Conduct**

22 In *United States v. Russell*, 411 U.S. 423, 431-32 (1973), the Supreme Court held that
23 outrageous government conduct occurs when the actions of law enforcement officers or
24 informants are "so outrageous that due process principles would absolutely bar the government
25 from invoking judicial processes to obtain a conviction." A dismissal of an indictment for
26 outrageous government conduct is rooted in the Due Process Clause of the Fifth Amendment of
27 the Constitution which provides, "no person shall . . . be deprived of life, liberty, or property
28 without due process of law." U.S. Const. amend. V.

The Ninth Circuit has held that dismissal of an indictment for outrageous government conduct is "limited to extreme cases" in which the defendant can demonstrate that the government's conduct "violates fundamental fairness" and is "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011). This is an "extremely high standard." *United States v. Black*, 733 F.3d 294, 302, (9th Cir. 2013) (citing *United States v. Garza-Juarez*, 992 F.2d 896, 904 (9th Cir. 1993)). There are only two federal appellate court decisions which have reversed convictions for outrageous government conduct. *Black*, id. citing *United States v. Twigg*, 588 F.2d 373 (3rd Cir. 1978); *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971).

Because there is no bright line rule establishing when law enforcement conduct goes from acceptable to outrageous, each case must be resolved on its own facts, considering the totality of the circumstances. Id. at 302, 304. The Ninth Circuit's decisions prior to *Black* provided some guidance about when law enforcement conduct crosses the line between acceptable and outrageous. In *United States v. Williams*, 547 F.3d 1187, 1199 (9th Cir. 2008), the Ninth Circuit held that it was outrageous for government agents to engineer and direct a criminal enterprise from start to finish (internal quotations omitted). It is outrageous government conduct to use "excessive physical or mental coercion" to convince an individual to commit a crime. *United States v. McClelland*, 72 F.3d 717, 721 (9th Cir. 1995). It is outrageous for the government to generate new crimes "merely for the sake of pressing criminal charges." *United States v. Emmert*, 829 F.2d 805, 812 (9th Cir. 1987). It is not outrageous for law enforcement to infiltrate a criminal organization, approach people who are already involved in or contemplating a criminal act, or to provide necessary items to a conspiracy. *United States v. So*, 755 F.2d 1350, 1353 (9th Cir. 1985). It is also not outrageous for the government to "use artifice and stratagem to ferret out criminal activity." *United States v. Bogart*, 729 F.2d 1428, 1438.

Both sides rely heavily on the Ninth Circuit's 2013 decision in *United States v. Black* to support their arguments. In *Black*, the Ninth Circuit found that the reverse sting challenged on appeal fell "within the bounds of law enforcement tactics that have been held reasonable." 733 F.3d at 302. A "reverse sting" is a term applied when the government initiates the criminal

8

conduct, setting up a fictitious crime, and arresting criminals as they begin to carry out what they believe is a real crime. *Id.* at 298 n.1.

Although the court upheld the conviction, it was troubled by two aspects of the fictional sting operation and how it came about in the first place. First, the court of appeals was concerned that the defendants were convicted of conspiracy to possess cocaine with intent to distribute and use of firearms in furtherance of a drug trafficking crime which resulted from an operation created and staged by ATF. *Id.* at 302-303. An ATF undercover officer used a CI and invented the entire scenario, the need for weapons and a "crew," and the amount of cocaine involved. The court found that the facts of the case suggested that the defendants were responding to the government's script, and that their only overt actions involved showing up at meetings, arriving at a parking lot with four hidden, loaded weapons, and driving to the storage warehouse where they were arrested. The defendants' actions corroborated that they intended to carry out these robberies, but also that they were responding to the scheme created by the government.

The *Black* court's second concern with the reverse sting operation was how the government recruited the defendants. ATF did not infiltrate a suspected crew of home invasion robbers or seduce persons known to have actually engaged in these types of crimes. Rather, the evidentiary hearing established that ATF used the CI to find individuals willing to commit a home invasion. Despite its two concerns, the Ninth Circuit held the government had not engaged in outrageous government conduct.

In upholding the convictions the Ninth Circuit applied various factors its prior cases had found relevant to determine whether the government conduct was outrageous: (1) known criminal characteristics of the defendants; (2) individualized suspicion of the defendants; (3) the government's role in creating the crime of conviction; (4) the government's encouragement of the defendants to commit the offense conduct; (5) the nature of the government's participation in the offense conduct; and (6) the nature of the crime being pursued and the necessity for the actions taken in light of the nature of the criminal enterprise at issue. *See* 733 F.3d at 303. The

Ninth Circuit stated that these factors were not a "formulistic checklist," but a means to focus the court's "analysis of the totality of the circumstances." *Id*. at 304.

The Ninth Circuit reviews a district court's decision to grant or deny a motion to dismiss an indictment for outrageous government conduct *de novo*. *Black* at 301. In conducting its *de novo* review, the Ninth Circuit views the evidence in the light most favorable to the government, and accepts the district court's factual findings unless they are clearly erroneous. *Id*.

Applying these factors, the court finds that under the totality of the circumstances presented here, the government's conduct is not so outrageous that due process principles require dismissal of the indictment. For the reasons discussed below, the court finds that this is not such an extreme case requiring dismissal. Snagglers has not established that the government engaged in conduct which violated fundamental fairness which was so shocking and so outrageous as to violate the universal sense of justice.

**1. Individualized Suspicion and Known Criminal Characteristics**

The first two factors, the known relevant characteristics of the defendant and whether the government has individualized suspicion of the defendant, are closely related. The government does not need to have an individualized suspicion of a defendant's wrongdoing before conducting an undercover investigation. *Black*, 533 F.3d at 304, citing *United States v. Luttrell*, 923 F.2d 764 (9th Cir. 1991). Whether the government had reason to suspect an individual or group before initiating the sting, however, is an important consideration in determining whether the government's conduct was outrageous. *Id.,* citing *United States v. Bonanno*, 852 F.2d 434, 438 (9th Cir. 1988). The government may appropriately focus on a category of persons if it has reason to believe they are involved in the type of illegal conduct being investigated. *Id.*

The motion to dismiss represents that Snagglers had no prior police record other than an arrest for soliciting a prostitute who turned out to be an undercover police officer. The government does not claim that Yurek was aware of any prior arrests or convictions. Rather, the government argues that the Craigslist site on which Snagglers posted his ad was a site used by individuals looking for a sexual relationship with another person, and known by law enforcement to be used by child predators.

1    Snagglers does not dispute that his Craigslist ad stated he was looking for "young girls"
2 and read:

3    I'm a very straight only white attractive young male whom is looking for young
     legal white or Mexican girls that want their pussy licked and fucked or even just
4    their pussy licked only . . . but I'm hoping for both. What ever you want is fine
     with me. Just as long as the picture you send me is the same girl as the girl I
5    actually meet and talk with in person before hooking up together. We can first do
     this in my suv with tinted windows and then possibly at my cozy home once I feel
6    comfortable with you when we meet before playing with each other. This can be
     a secret one time thing or a regular scheduled casual encounters. Please message
7    me with recent pictures and what you are open to doing together. Don't bother
     writing me if you are a female over 30 or some gay man trying to convert other
8    guys or a hooker wanting money. I only lick and fuck pretty young white &
     Mexican girls!!! I don't have the time for that whole night club one night stand
9    stuff. So I'm trying CL to see if it is fore real like my friends say it is?

10    Snagglers does not dispute that Detective Yurek responded to the ad by asking "how
11 young are u willing to kik it with?" The email exchanges reported by the government in the
12 response indicates that Snagglers did not directly respond to the question prompting Yurek to
13 respond "u didn't answer the question silly!" Snagglers responded "Please send me some
14 pictures so I know you are for real and not playing games. If you're cute I'm open to cuddling
15 with you." After this message Yurek responded "I'm thirteen…..do u still wanna pic…I am
16 real." According to the exchanges produced in discovery, after Snagglers was told he was
17 communicating with a 13-year-old girl, Yurek asked Snagglers if he still wanted a picture and
18 Snagglers responded 7 minutes later, "Send me some regular plus some nude pictures so I know
19 you are serious. What is your name sweetie?"

20    Three messages later, Snagglers asked what "Tanya" had in mind, what part of town she
21 lived in, and suggested that they meet sometime soon. When "Tanya" did not respond,
22 Snagglers sent a message 21 minutes later stating, "I was wondering if you are still a virgin?
23 How come you're on a casual encounters website? What are you looking to have done to you
24 cutie?" Subsequent messages Snagglers sent "Tanya" contain a graphic description of the sexual
25 encounters Snagglers claimed to have engaged in with "a few high school girls"; stated that
26 "many horny high school girls do search Craigslist looking for a secret casual encounter without
27 her parents finding out about her secret sex life"; and made claims about Snagglers' own ability
28 to create a pleasurable sexual experience. The government also claims that Snagglers made

1 numerous references to "Tanya" being a teenage girl in the exchanges, such as commenting that
2 she was mature for her age, liked to shop at the mall because "that's what girls your age do",
3 referred to buying her teddy bears and marrying her "once she is of age." He also made
4 statements that he wished "Tanya" had lied about her age because then he would know he is not
5 being "set up" by the cops.

6 Snagglers' motion and reply do not dispute the contents of the exchanges the government
7 produced in discovery in this case. Detective Yurek did not have any knowledge of Snagglers
8 prior to responding to Snagglers' Craigslist advertisement. However, the ad clearly
9 communicated a desire to engage in sexual encounters with "young girls." Detective Yurek's
10 initial response asked how young Snagglers had in mind. Although Snagglers initially avoided
11 answering the question, when he was told that "Tanya" was thirteen, Snagglers continued to
12 communicate with her online asking for pictures and nude pictures. Snagglers sent messages
13 giving a graphic description of his prior sexual experiences with young girls and "horny high
14 school girls." Under these circumstances the court finds it was reasonable for Detective Yurek to
15 initiate the contact with Snagglers and continue engaging in exchanges once Snagglers was
16 informed that "Tanya" was thirteen.

### 2. The Government's Role in Creating the Crime

18 In evaluating whether the government engaged in outrageous conducted under the Due
19 Process Clause of the Fifth Amendment, the court should also consider whether the government
20 initially approached the defendant, or whether the defendant approached the government agent.
21 *Id.* Here, Snagglers posted the ad expressing an interest in having sex with young girls.
22 Detective Yurek responded to the ad to find out whether Snagglers was interested in underage
23 girls. Snagglers continued to engage in messages with "Tanya" after he learned she was 13. The
24 sample message exchanges included in the government's response clearly establish that
25 Snagglers communicated with "Tanya" asking what she wanted to have done to her and
26 describing in graphic detail his prior sexual experiences with young girls after being told she was
27 thirteen. Yurek was conducting an undercover operation. Snagglers was not responding to a

1  scheme created by the government.  Snagglers posted the ad and Yurek engaged in artiface and
2  strategem to ferret out potential criminal activity.

### 3. The Government's Encouragement of Snagglers

In *Black*, the Ninth Circuit examined the extent to which law enforcement encourage the defendant to participate in the charged conduct finding "mere encouragement being of lesser concern than pressure or coercion." *Id*. The motion to dismiss argues that Yurek coerced, enticed, persuaded and induced Snagglers throughout the 14 day dialogue.  It also claims that without the relentless and exhaustive provocation by Yurek, no crime would have been committed.  Finally, the motion to dismiss argues that for the first thirteen days, Yurek had no reason to believe Snagglers would commit a crime.  He bases this argument on an incident report prepared by Detective Yurek which was apparently supposed to be attached to the motion to dismiss, but was not.  However, according to the motion, Yurek's report states, "Alex wrote 'if you would have said your age right away, I would have slept with you the first night.'"  Yurek's report reflects "I now believe for the first time that Alex was talking about what he wanted to do with me when we first met."  According to the motion to dismiss, Yurek then arranged the meeting between the two.  However, there is no citation to any email message to support the claim that Yurek first suggested meeting.  Different inferences may be drawn from this message.  The court lacks the full context of the exchanges which prompted it.  However, one reasonable inference is that Snagglers was wary about making arrangements to have sex with a 13 year old girl.

Additionally, the government disputes that Yurek first suggested meeting Snagglers.  According to the government, it was Snagglers who first suggested meeting with "Tanya" after he learned that she was thirteen.  Although the motion to dismiss asserts Yurek pressured or coerced Snagglers, it provides no examples of the actual email exchanges alleged to constitute pressure or coercion.  Snagglers provided no evidence at all that Yurek encouraged Snagglers to engage in the offense, let alone pressured or coerced him.  From the exchanges the government provided in its response, there is no indication Snagglers displayed any hesitation at all to participate in graphic sexual discussions with someone he thought was a 13-year-old girl.

### 4. The Nature of the Government's Participation

Snagglers' motion acknowledges that in *Black*, the Ninth Circuit considers the duration, nature and necessity of the government's action in assessing this factor. Snagglers argues that this factor weighs in his favor because Yurek initiated the conversation, spent fourteen days and 347 messages conversing with Snagglers, and initiated the conversation on eleven of those fourteen days. The court disagrees. The government claims Snagglers also sent "Tanya" hundreds of messages and 14 days is not a long enough period of time to persuade the court Snagglers was worn down, pressured or coerced.

### 5. Nature of the Crime/Necessity of the Government Action

Snagglers acknowledges the seriousness of the crime involved in this case. However, he argues he was apprehended in a flawed and outrageous manner because Detective Yurek overreached and badgered him in this investigation over fourteen days. According to the motion to dismiss "this particular matter presents a paradigm example upon which a dismissal is justified." The court disagrees.

As the Ninth Circuit observed in *Meek*, "undercover officers have been forced to resort to extensive investigation and sting operations to ferret out pedophiles who troll the internet for minors." 366 F.3d at 719. There, the Ninth Circuit rejected the defendant's argument that § 2422(b) cannot impose criminal liability when the defendant believes he is inducing a minor, but the object of his inducement is really an adult. The Ninth Circuit held that the text of the statute was clear and that the attempt provision of the statute "underscores Congress' effort to impose liability regardless of whether the defendant succeeded in the commission of the intended crime." *Id.* at 718.

The Court of Appeals found that § 2422(b) is no different than an attempted solicitation of a prostitute who turns out to be a decoy undercover officer. *Id.* at 719. The Ninth Circuit pointed out that "detectives and undercover officers would be unable to police effectively the illegal inducement of minors for sex" without allowing this type of sting operation. In fact, the court believed that taking such a restrictive view of this statute "would restrict its purpose" and that "police preventative measures such as the sting operation conducted here would come at the

cost of either rarely securing a conviction, or putting an actual child in harm's way." *Id.* In short, the court finds that the nature of the crime necessitates the type of undercover operation conducted by Detective Yurek in this case.

### D. Entrapment

Snagglers argues the court should dismiss the indictment because he was entrapped. Entrapment is an affirmative defense and therefore, an issue for trial, not a motion to dismiss. *United States v. Freed*, 401 U.S. 601, 607 (1971); s*ee* also, *United States v. Gurolla*, 333 F.3d 944, 951 (9th Cir. 2003). The moving and responsive papers establish multiple factual questions associated with the validity of this defense which may not be decided by the court. Entrapment is an affirmative defense that must be decided by the jury. *United States v. Shafer*, 625 F.3d 629, 635 (9th Cir. 2010). Snagglers may, of course, raise his entrapment defense at trial and request a jury instruction. However, this is not an appropriate defense which may be raised on a Rule 12(b)(1) motion.

### E. Legislative History Arguments

Snagglers motion to dismiss raises a number of issues based on the legislative history of the 1998 Amendment to § 2422(b) which added the attempt provision. However, the Ninth Circuit has clearly and unequivocally held that the text of § 2422(b) is clear. *Meek*, at 719. In *Meek*, the court declined to consider the legislative history because the statute was clear. *Id.* ("Given the clarity of the text of the statute and the ambiguous nature of the legislative history, we see no reason to engage in the crude guesswork of eschewing the statute's plain language in favor of murky legislative history.") *Id.* at 720. Snagglers' legislative history arguments are thus without merit.

For the reasons stated,

**IT IS RECOMMENDED** that Snagglers' Motion to Dismiss be **DENIED.**

DATED this 30th day of December, 2015.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE